**Fred ROBINS, Plaintiff,**

v.

**MAX MARA, U.S.A., INC., Max Mara Fashion Group, SpA, Joseph Picone, Julia Kaferstein, Orsetta Mantovani, Luigi Maramoti, and Fernando Fornaciari, Defendants.**

No. 93 Civ. 6684 (SAS).

United States District Court, S.D. New York.

Feb. 7, 1996.

Opinion Denying Reconsideration Feb. 27, 1996.

**464**

Arthur M. Wisehart, Wisehart & Koch, New York City, for plaintiff.

Steven M. Post, Phillips Nizer Benjamin Krim & Ballon L.L.P., New York City, for defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

This opinion addresses Defendants' motion to dismiss Plaintiff's state law claims which are before the Court as a result of diversity of citizenship between the parties. Plaintiff's federal question claims were dismissed pursuant to this Court's Amended Opinion and Order of January 16, 1996, 914 F.Supp. 1006. The Court assumes familiarity with that Opinion, which sets forth the facts of this case.

### I. *Standard*

■ In considering a motion to dismiss, the Court must presume all factual allegations in the complaint to be true. *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994). Moreover, the Court must draw all reasonable inferences in favor of the non-moving party. *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). Only if "it appears beyond doubt that the plaintiff[ ] can

prove no set of facts in support of [his] claim which would entitle [him] to relief" should a court grant a motion to dismiss. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### II. *State Law Claims*

A. *New York Human Rights Law and New Jersey Law Against Discrimination*

■ Robins brings claims against Defendants under both the New York Human Rights Law, N.Y.Exec.Law §§ 290 *et seq.* (McKinney 1993) ("NYHRL"), and the New Jersey Law Against Discrimination, N.J.Rev. Stat. §§ 10:5–1 *et seq.* (West 1996) ("NJLAD"). Both laws prohibit, among other things, employers from discharging and discriminating against employees on the basis of certain factors including age, national origin, and disability. However, the statutes differ in the remedies available to successful litigants. Under the NJLAD, a successful plaintiff may recover punitive damages and attorneys' fees from a defendant found to have violated the law. N.J.Rev.Stat. § 10:5–27.1 (attorneys' fees); *Levinson v. Prentice–Hall, Inc.,* 868 F.2d 558, 560 (3d Cir.1989) (punitive damages). However, neither attorneys' fees nor punitive damages are available under the NYHRL. *Thoreson v. Penthouse Int'l, Ltd.,* 80 N.Y.2d 490, 499, 591 N.Y.S.2d 978, 606 N.E.2d 1369 (1992); *Kump v. Xyvision, Inc.,* 733 F.Supp. 554, 562 (E.D.N.Y.1990). Therefore the laws are in conflict.

■ When a federal court sitting in diversity faces conflicting laws, it may apply only one of the laws, and must choose between them according to the choice of law principles of the state in which it sits. *Banker v. Nighswander, Martin & Mitchell,* 37 F.3d 866, 871 (2d Cir.1994) (citing *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941)); *Continental Casualty Co. v. Pullman, Comley, Bradley & Reeves,* 929 F.2d 103, 105 (2d Cir.1991). Thus New York's choice of law jurisprudence governs the determination of

whether to apply the NJLAD or the NYHRL. New York has different choice of law tests for tort and contract claims. For tort claims, New York focuses on which jurisdiction has the greater interest in a dispute. *Travelers Indem. Co. v. Levy*, 195 A.D.2d 35, 38, 606 N.Y.S.2d 167 (1st Dep't.1993). For contract claims, New York uses the "grouping of contacts" test. *Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 226, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993). This difference is based on the "distinction between cases of conduct regulation and cases of loss allocation." *Travelers*, 195 A.D.2d at 38–39, 606 N.Y.S.2d 167. Cases of conduct regulation are decided according to the state interest test, while cases involving loss allocation are "measured according to the grouping of contacts test." *Id.* at 39, 606 N.Y.S.2d 167.

■ While it is clear that an employment discrimination claim is not a tort, *Cervenka v. New York City Transit Auth.*, 628 N.Y.S.2d 405, 405 (2d Dep't.1995), the claim is still a case of conduct regulation. Therefore the state interest test applies. Under that test, controlling effect is given "to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation." *Babcock v. Jackson*, 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963); *see also Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 196, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985) (quoting *Babcock* ). Thus, the issue to be decided is whether New York or New Jersey has the greater concern with Robins' claim of employment discrimination.

■ Robins was employed by Max Mara USA, which has its principal place of business in New York. Am.Cplt. ¶¶ 5, 14. Robins further alleges that the discriminatory acts and practices against him occurred in New York. Affidavit of Fred Robins ("Robins Aff.") ¶ 7, Am.Cplt. ¶ 12. "[A] substantial part of the unlawful actions, events or omissions giving rise to the claims . . . occurred within . . . New York." Am.Cplt. ¶ 13. As the claim's only apparent connection with New Jersey is that Robins is a New Jersey resident, Am.Cplt. ¶ 3, New York is more " 'intimately concerned with the outcome of the . . . litigation.' " *Babcock*, 12 N.Y.2d at 481–82, 240 N.Y.S.2d 743, 191 N.E.2d 279

(quoting *Auten v. Auten*, 308 N.Y. 155, 161, 124 N.E.2d 99 (1954)). Consequently, Robins' NYHRL claim survives but his NJLAD claim must be dismissed.

## B. *New York City Human Rights Law*

■ Robins also sues under the New York City Human Rights Law ("NYCHRL"), codified in Title VIII of the New York City Charter and Administrative Code ("Code"). Among other things, that law prohibits employers from discharging and discriminating against employees on the basis of certain factors including age, national origin, and disability. Code § 8–107. The law provides a cause of action in court for aggrieved employees, but requires employees, before suing, to "serve a copy of the complaint upon the city commission on human rights and the corporation counsel." *Id.* § 8–502(c). Defendants do not dispute that Robins served a copy of his original complaint on both entities before suing. *See* Robins Aff. ¶¶ 8, 9; Robins Aff.Ex. B. However, it is not clear whether Robins ever served those entities with a copy of his amended complaint. Defendants maintain that the law requires Robins to do so, and seek dismissal of Robins' NYCHRL claim on the ground that Robins did not comply with that requirement.

The law is ambiguous on this point, as it includes no mention of amended complaints: "Prior to commencing a civil action pursuant to subdivision a of this section, the plaintiff shall serve a copy of the complaint upon" the required agencies. Code § 8–502(c). However, case law provides some insight into the interpretation of this provision. One recent decision emphasized that the policy behind § 8–502(c) appears to be to provide notice, "as the Code does not mandate that the City Commission investigate or attempt to mediate a dispute after being served with a complaint to be filed in a civil action and before permitting the complainant to proceed on that complaint in civil court." *McIlwain v. Korbean Int'l Investment Corp.*, 896 F.Supp. 1373, 1384 (S.D.N.Y.1995). In *McIlwain*, the defendants moved to dismiss the plaintiff's NYCHRL claim on the ground that she had not served the Corporation Counsel and City Commission on Human Rights with her com-

plaint. *Id.* at 1383–84. Upon plaintiff's submission of an affidavit stating that she had since served the agencies with the complaint, the court found that § 8–502(c) was satisfied—that is, the agencies had received sufficient notice—even though service of the complaint was made after plaintiff commenced her lawsuit. *Id.* at 1384.

Arguably, then, Robins has fulfilled the purpose of the statute. His service of the original complaint provided notice to the Corporation Counsel and City Commission on Human Rights that he would be suing the Defendants for employment discrimination.[1] Moreover, in another case addressing this provision, the plaintiff's failure to allege that she had served her amended complaint on the specified agencies did not require dismissal of an NYCHRL claim where the plaintiff's counsel certified in a letter to the court that the service had been made. *See Dirschel v. Speck,* 94 Civ. 0502, 1994 WL 330262, at *5 (S.D.N.Y. July 8, 1994).[2]

Several cases support the dismissal of an NYCHRL claim because the plaintiff did not serve (or did not prove he served) the agencies with the *original* complaint before commencing a lawsuit. *See, e.g., Walsh v. Lincoln Sav. Bank, FSB,* 93 Civ. 1101, 1995 WL 66639, at *2 n. 1 (S.D.N.Y. Feb. 17, 1995); *Paladines v. Poulos,* 93 Civ. 9031, 1994 WL 389022, at *3 (S.D.N.Y. July 22, 1994); *Lightfoot v. Union Carbide Corp.,* 92 Civ. 6411, 1994 WL 184670, at *5 (S.D.N.Y. May 12, 1994). However, in this case Robins *did* serve the agencies before commencing suit. There appears to be no case supporting the dismissal of an NYCHRL claim where the plaintiff had served the agencies with the original complaint but not an amended complaint. Consequently, in accordance with the reasoning of *McIlwain* and *Dirschel,* I decline to dismiss Robins' claim provided that he serves his Amended Complaint on both entities and notifies the Court of such service within 10 days of the date of this Opinion.

## C. Breach of Contract

### 1. Existence of Oral Contract Before June 1992

■ Robins alleges (Am.Cplt. ¶ 77) that he was hired in 1987 pursuant to an agreement that was partly oral and partly written. However, Robins fails to point out that as of February 1988, his employment at Max Mara USA was governed solely by a series of written agreements, which are part of the record. *See* Affidavit of John Gleeson, Treasurer of Max Mara USA ("Gleeson Aff."), Exs. B, C, D. Each written agreement contained an integration clause and prohibited oral modifications to the agreement. Gleeson Aff. Ex. B ¶ 14; Ex. C ¶¶ 9, 11; Ex. D ¶ 14. Therefore, any oral contract made between Robins and Max Mara USA at the time Robins was hired in 1987 was terminated in February 1988. To the extent that Robins intends his allegation of the existence of an oral contract to extend past February 1988, such allegation is contradicted by the documentary evidence. Thus any allegation of an oral contract past February 1988 must be rejected. *See Herman v. Greenberg,* 634 N.Y.S.2d 99, 100 (1st Dep't.1995); *Ullmann v. Norma Kamali, Inc.,* 207 A.D.2d 691, 692, 616 N.Y.S.2d 583 (1st Dep't 1994). Robins' separate claim that a new oral contract was created in June 1992, when he received notice that Max Mara USA planned to terminate his written contract (Pl.Mem. at 8–9), is addressed at Section C.3 *infra.*

### 2. Written Contract Was Terminated Pursuant to Its Terms

■ Robins' most recent contract with Max Mara USA was in effect from April 1, 1989 through December 31, 1989, and from year to year thereafter unless terminated pursuant to its terms. Gleeson Aff.Ex. D ¶ 6(a). Max Mara USA complied with the contract terms in terminating the agreement. The contract required either party to give written notice at least six months before terminating the contract. Gleeson Aff.Ex. D

---

1. No defendants were added in the Amended Complaint. The original and amended complaints differed in the addition of claims for breach of contract, tortious interference, and violations of 42 U.S.C. §§ 1985(3), 1986.

2. It is not clear from the *Dirschel* opinion whether plaintiff served the amended complaint on the agencies before or after filing it in court.

¶ 6(a). On June 8, 1992, Max Mara USA notified Robins in writing that it intended to terminate its contract with Robins at the end of the agreement's current term; that is, as of January 1, 1993. Gleeson Aff.Ex. E; Robins Aff. ¶ 81; Am.Cplt. ¶ 91.[3] Thus, in terminating the agreement, the company complied with its terms. Consequently, in alleging breach of written contract, Robins has not stated a claim upon which relief may be granted. His claim is therefore dismissed.

### 3. Period Between Notice of Intent to Terminate Written Contract and Termination of Written Contract

■ Robins further claims that Max Mara USA entered into a new, oral contract with him when it notified him in June 1992 that it would terminate his written contract as of January 1, 1993. Pl.Mem. at 8–9. This claim is based on allegations that Defendant Picone made certain statements to Robins around the time that Max Mara USA gave notice of its intent to terminate the written contract. These statements were to the effect that the termination of Robins' contract was merely a formality; that his employment with Max Mara USA would continue under the same terms as before; and that Robins could stay with the company as long as he liked, assuming his performance was satisfactory. Am.Cplt. ¶¶ 93–94; Robins Aff. ¶¶ 81–83, 89.

■ Robins' claim that an oral contract was formed is belied by the facts. The written contract was not terminated upon Max Mara USA's giving Robins notice that it *would* be terminated as of January 1, 1993. On the contrary, the written contract remained in effect, pursuant to its terms, through the end of 1992. Gleeson Aff.Ex. D ¶ 6(a). Moreover, the written contract prohibited oral modifications to the contract. *Id.* ¶ 14. "When a written contract provides that it can only be changed by a signed writing, an oral modification of that agreement … is not enforceable." *Tierney v. Capricorn Investors, L.P.*, 189 A.D.2d 629, 631, 592 N.Y.S.2d 700 (1st Dep't.), *leave to appeal denied*, 81 N.Y.2d 710, 599 N.Y.S.2d 804, 616 N.E.2d 159 (1993). Consequently, any oral statements made by any Defendant to Robins while the written contract was in effect did not create an oral contract. The terms of the written contract remained in effect until Robins' termination as of January 1, 1993. Robins has not stated a claim for breach of oral contract upon which relief may be granted. Thus his claim is dismissed.[4]

---

3. That was all Max Mara USA was required to do, according to the terms of the contract. However, in its written notice to Robins, the company went on to state that it would not terminate Robins' employment (either on January 1, 1993 or afterwards) without giving Robins at least 30 days written notice. Gleeson Aff.Ex. E. Max Mara USA complied with this self-imposed provision by notifying Robins in writing on November 19, 1992 that it planned to terminate Robins' employment altogether as of January 1, 1993. Gleeson Aff.Ex. G.

4. Even assuming for the purpose of argument that an oral contract was created in June 1992, such contract was still a contract for employment at will. Under New York law, "absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987) (citation omitted). Moreover, an employer may terminate "an at-will employee at any time for any reason or for no reason, except where that right has been limited by express agreement." *Id.* at 334, 514 N.Y.S.2d 209, 506 N.E.2d 919.

There is no evidence that Max Mara USA expressly agreed to any limitation on the at-will

presumption. Robins alleges only that Max Mara USA representatives made the following statements to him around June 1992 (when the alleged oral contract was formed): Robins' relationship with Max Mara USA "would continue as it was before" (Am.Cplt. ¶ 93); Robins had a position with Max Mara USA for as long as he desired *so long as his performance was satisfactory* (Robins Aff. ¶ 83); and Robins would have continued employment with Max Mara USA "for the remainder of [his] career" (Robins Aff. ¶ 87). Each of these statements falls within the category of "[a]bstract assurances of future employment" that "will not transform … employment at will to a contract of permanent employment." *Kelly v. Chase Manhattan Bank*, 717 F.Supp. 227, 234 (S.D.N.Y.1989). In *Kelly*, the plaintiff was told "you will have a good career with Chase" and "don't worry you will not be terminated." *Id.* These statements are comparable to what Robins alleges he was told. *See also Hunnewell v. Manufacturers Hanover Trust Co.*, 628 F.Supp. 759, 762 (S.D.N.Y.1986) (promise of "full working life" did not state a definite term); *Dalton v. Union Bank of Switzerland*, 134 A.D.2d 174, 175, 520 N.Y.S.2d 764 (1st Dep't.1987) (hiring for "the longer term" constituted hiring at will).

### D. *Tortious Interference*

It is unclear from the Amended Complaint whether Robins is alleging tortious interference with contract or tortious interference with business relationships. While Robins first alleges that Defendants "conspired . . . to appropriate to their own advantage the goodwill in the trade belonging to plaintiff," Am.Cplt. ¶ 102, he also claims that "Defendants Max Mara SpA, Fornaciari and Maramoti conspired to and did act to interfere with, impair and destroy plaintiff's contractual and employment rights with Max Mara USA *and* the business that plaintiff had established for it, to plaintiff's injury and detriment." Am.Cplt. ¶ 105 (emphasis added). This suggests that Robins alleges both types of tortious interference. However, in his Memorandum of Law, Plaintiff suggests that his claim is actually one for tortious interference with contract. In any event, I will assume that Robins has alleged both claims, and I will address each of them.

### 1. *Tortious Interference with Contract*

In order to state a claim for tortious interference with contract under New York law, a plaintiff must show four elements: (i) the existence of a valid contract; (ii) defendant's knowledge of that contract; (iii) defendant's intentional procurement of the breach of that contract; and (iv) damages caused by the breach. *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 767 (2d Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 381, 133 L.Ed.2d 304 (1995); *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993) (citations omitted). However, as discussed above, Max Mara USA did not breach its contract with Robins. "In order for the plaintiff to have a

cause of action for tortious interference of contract, it is axiomatic that there must be a breach of that contract by the other party." *Jack L. Inselman & Co. v. FNB Fin. Co.*, 41 N.Y.2d 1078, 1080, 396 N.Y.S.2d 347, 364 N.E.2d 1119 (1977). *See also Winicki v. City of Olean*, 203 A.D.2d 893, 894, 611 N.Y.S.2d 379 (4th Dep't.1994) (plaintiffs had not stated a claim for tortious interference where there was no breach of contract). Because Robins has failed to establish a required element, his claim for tortious interference with contract must be dismissed.[5]

### 2. *Tortious Interference with Business Relations*

Robins also alleges tortious interference with business relations. However, in New York an employee cannot state this type of claim when the business relations belong to his employer and not to him. *See Frishberg v. Esprit de Corp, Inc.*, 778 F.Supp. 793, 804 (S.D.N.Y.1991), *aff'd,* 969 F.2d 1042 (2d Cir.1992); *Duke Power Co. v. Envtl. Study Group, Inc.*, 438 U.S. 59, 80, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978) (a plaintiff " 'cannot rest his claim to relief on the legal rights or interests of third parties' "); *Scodari v. Alexander*, 69 F.R.D. 652, 661 (E.D.N.Y. 1976) (the "general rule is that one lacks standing to maintain a lawsuit to protect the rights of others"); *Trustees of Freeholders and Commonalty of Town of Huntington v. EPA*, 55 F.R.D. 445, 446–47 (E.D.N.Y.1972) (same). Because Robins explicitly complains of interference with "the business that plaintiff had established for [Max Mara USA]," Am.Cplt. ¶ 105, Robins' claim for tortious interference with business relations must be dismissed.

---

Because Max Mara USA did not agree to any limitation on the presumption of employment at will, the company could terminate Robins' employment (or Robins could quit) at any time even without cause. Thus even if an oral contract existed, Max Mara USA did not breach the contract. Dismissal of Robins' claim for breach of oral contract is therefore warranted on this alternative ground as well.

5. Even if there had been a breach of contract, Robins' claim of tortious interference with contract is really a claim for wrongful discharge. New York law does not recognize such claims,

"declin[ing] to allow the use of substitute nomenclature . . . to bootstrap the threshold deficiency in a wrongful discharge claim." *Ingle v. Glamore Motor Sales, Inc.*, 73 N.Y.2d 183, 188, 538 N.Y.S.2d 771, 535 N.E.2d 1311 (1989) (citing *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983)). A plaintiff may not "evade the employment at-will rule and relationship by recasting his cause of action in the garb of a tortious interference with his employment." *Ingle*, 73 N.Y.2d at 189, 538 N.Y.S.2d 771, 535 N.E.2d 1311.

## III. *Other Grounds For Relief*

Defendants also urge relief on the following grounds.

### A. *Service of Process*

 Defendants Fashion Group and Maramoti further claim that Robins has not properly served them with the Amended Complaint. "When a defendant challenges service, the plaintiff bears the burden of coming forth with some evidence that service was effected." *Crossen v. Bernstein*, 91 Civ. 3501, 1994 WL 281881, at *3 (S.D.N.Y. June 23, 1994) (citing *Daley v. ALIA*, 105 F.R.D. 87, 89 (E.D.N.Y.1985)). However, Defendants admit that Fashion Group received the Amended Complaint in Italy through the mail. Gleeson Aff. ¶ 17. This service comports with the requirements set forth in Fed. R.Civ.P. 4(h)(2) (which refers to Rule 4(f)(1)), authorizing service "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Article 10(a) of that Convention, to which Italy is a signatory, protects "the freedom to send judicial documents, by postal channels, directly to persons abroad." [6]

 As to Maramoti, Robins apparently served him with the original complaint by mail in Italy, but did not mail the Amended Complaint to him in Italy. Gleeson Aff. ¶ 17. Robins presents no evidence to suggest that he *did* serve the Amended Complaint on Maramoti by mail in Italy. Robins did, however, mail a copy of the Amended Complaint to Maramoti at the New York office of Max Mara USA. *Id.* ¶ 16. When Robins was hired by Max Mara USA in 1987, Maramoti was a member of the Board of Directors of that company. Am.Cplt. ¶ 18. Moreover, in September 1992, Maramoti was elected Chairman of the Board of Directors of Max Mara USA. Robins Aff. ¶ 50; Ex. J. Robins was terminated as of January 1, 1993. Am.Cplt. ¶ 59. Though it might seem reasonable to serve Maramoti at the office of the company of which he is Chairman of the

Board, a careful examination of the federal and state rules regarding service upon a natural person is required. Under Fed. R.Civ.P. 4(e)(1), personal service "may be effected in any judicial district of the United States pursuant to the law of the state in which the district court is located, or in which service is effected." The district court is located (and service of Maramoti was effected) in the state of New York. Thus we look to New York law to determine if the service was proper.

Under N.Y.Civ.Prac.L. & R. § 308(2), Robins' service by mail of Maramoti at the office of Max Mara USA was proper if that office is Maramoti's "actual place of business," *and* if service was also made by delivery (in addition to mailing) at Maramoti's "actual place of business, dwelling place or usual place of abode." Robins makes no showing that he complied with the delivery prong of New York's service requirement. His attempted service of Maramoti was improper for that reason alone. But in addition, "[i]n order for a place to be a person's 'actual place of business,' that person must be shown to regularly transact business at that place." *Anon Realty Assocs., L.P. v. Simmons Stanley Ltd.*, 153 Misc.2d 954, 957, 583 N.Y.S.2d 778 (Sup.Ct.N.Y.Co.1992). Robins states that Maramoti "came to New York on numerous occasions to work with the management of Max Mara USA." Robins Aff. ¶ 68. Rather than suggesting that Maramoti regularly transacted business at the office of Max Mara USA, this allegation implies that while Maramoti came to New York on numerous occasions, Maramoti's regular place of business was elsewhere. Accordingly, Robins did not properly serve the Amended Complaint on Maramoti, and therefore the claims in the Amended Complaint against Maramoti must be dismissed.

However, because Maramoti was properly served with Robins' original complaint, the claims under the NYHRL and NYCHRL against Maramoti set forth in that complaint still survive. *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 669 (2d Cir.1977), *cert.*

---

**6.** The word "send" in that context has been interpreted to mean "serve." *See Ackermann v.*

*Levine,* 788 F.2d 830, 839 (2d Cir.1986).

*denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978) (original complaint, if properly served, remains in effect until amended complaint is properly served).

### B. *Personal Jurisdiction*

 Defendants Fashion Group and Maramoti argue that this Court lacks personal jurisdiction over them. This argument is without merit. Robins alleges that Max Mara USA was "designed solely to sell [Fashion Group's] garments and other product lines ... and Max Mara USA does not sell garments from any other manufacturer." Robins Aff. ¶ 30. Where a foreign corporation sells goods in New York through a subsidiary, such activity "subject[s] the parent corporation to personal jurisdiction in New York." *Pfizer Inc. v. Perrigo Co.,* 903 F.Supp. 14, 16 (S.D.N.Y.1995). *See also Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.,* 869 F.2d 34, 40 (2d Cir.1989) (holding that a subsidiary's activities "will be attributed to the foreign parent for purposes of determining the parent's amenability to personal jurisdiction in New York"). Thus this Court has personal jurisdiction over Fashion Group.

 Maramoti argues that Robins has not alleged in his complaint that Maramoti has "any specific nexus whatsoever with New York." Def.Mem. at 21. Maramoti is incorrect. In ¶ 11 of the original complaint, Robins alleges that "Defendants are found, have agents, and transact business at 530 Seventh Avenue, New York, New York ..." Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary ... who ... transacts any business within the state." N.Y.Civ.Prac.L. & R. § 302(a). Robins' allegations meet this requirement, and thus this Court may exercise personal jurisdiction over Maramoti.

### C. *Dismissal of Fashion Group as a Defendant*

 Fashion Group argues that it should be dismissed as a defendant from Robins' employment discrimination claims because Max Mara USA, and not Fashion Group, was Robins' employer. The New York [state] Human Rights Law does not define the term "employer."[7] *State Div. of Human Rights on Complaint of Emrich v. GTE Corp.,* 109 A.D.2d 1082, 1083, 487 N.Y.S.2d 234 (4th Dep't.1985). However, in determining whether a defendant is actually the plaintiff's employer for the purpose of that law, courts consider the following elements:

> (1) whether the proposed employer had the power of the selection and engagement of the employee; (2) whether the proposed employer made the payment of salary or wages to the employee; (3) whether the proposed employer had the power of dismissal over the employee; and (4) whether the proposed employer had the power to control the employee's conduct.

*Alie v. NYNEX Corp.,* 158 F.R.D. 239, 246 (E.D.N.Y.1994); *see also Goyette v. DCA Advertising Inc.,* 830 F.Supp. 737, 746 (S.D.N.Y. 1993). The most important consideration in this analysis is "[w]hether the alleged employer exercised control over the employee's conduct and the incidents of his employment." *Alie,* 158 F.R.D. at 246; *see also Germakian v. Kenny Int'l Corp.,* 151 A.D.2d 342, 343, 543 N.Y.S.2d 66 (1st Dep't.), *appeal denied,* 74 N.Y.2d 615, 549 N.Y.S.2d 960, 549 N.E.2d 151 (1989) (citing *GTE Corp.*). An analysis of the allegations in this case within the above-described framework reveals the following.

> *Factors #1 and #3:* According to Robins, since at least April 1988, the Chairman of Board of Max Mara USA was required to approve the hiring and firing of all full-time Max Mara USA employees. Robins Aff. ¶ 52. This power extended to temporary employees, salary increases and bonuses as of September 1990. Robins Aff. ¶ 53. Robins makes no claim that Fashion Group had any role in such employment decisions; rather, he claims only that the

---

7. The NYHRL states only what an employer is not: "The term 'employer' does not include any employer with fewer than four persons in his employ." N.Y.Exec.Law § 292(5). Similarly, the city human rights law merely states that the term 'employer' "does not include any employer with fewer than four persons in his or her employ," and describes the circumstances under which independent contractors are considered employees. Code § 8–102(5).

Chairman of the Board of Max Mara USA (who was Maramoti) was simultaneously the Chairman of the Board of Fashion Group. Robins Aff. ¶¶ 50, 54. Such allegation is insufficient to suggest that Fashion Group had the power to select, hire or dismiss employees of Max Mara USA. *See also* Gleeson Aff. ¶ 13.

*Factor #2:* According to Gleeson, Max Mara USA "paid for its own payroll [and] benefit packages." Gleeson Aff. ¶ 11. Thus Robins cannot show that Fashion Group made the payment of salary or wages to Robins.

*Factor #4:* According to Robins, to some degree, Fashion Group did have the power to control the conduct of Max Mara USA employees. Robins Aff. ¶ 33. "All strategies on how to sell the garments as well as what types of accounts to approach were established by" Fashion Group; further, "the prices of the garments were fixed by direction from [Fashion Group] and [Max Mara USA employees] had no ability to alter them." *Id.* ¶ 40. Moreover, "[p]rojections for units to produce and projections for sales for Max Mara USA had to be sent to and approved by executives of" Fashion Group. *Id.* ¶ 46.

Upon considering and balancing these factors, I cannot conclude that Fashion Group was Robins' employer for the purpose of the New York Human Rights Law. Moreover, courts generally treat the state and city Human Rights Laws as comparable. *Alie,* 158 F.R.D. at 246 n. 4 (citing *Pace College v. Comm'n on Human Rights of City of New York,* 38 N.Y.2d 28, 33, 377 N.Y.S.2d 471, 339 N.E.2d 880 (1975); *Western Union Int'l, Inc. v. City of New York Comm'n on Human Rights,* 128 Misc.2d 217, 220, 489 N.Y.S.2d 665 (Sup.Ct.N.Y.Co.1985), *aff'd,* 120 A.D.2d 996, 502 N.Y.S.2d 568 (1st Dep't.1986)). Thus I also conclude that Fashion Group was not Robins' employer for the purpose of the city human rights law. Fashion Group is dismissed as a defendant from both claims.

**D.** *Claim of National Origin Discrimination*

■ Maramoti argues further that the claim of discrimination on the basis of nation-

al origin should be dismissed against him because he maintains that he is protected by the Treaty of Friendship, Commerce and Navigation between Italy and the United States ("FCN Treaty").[8] *See* 63 Stat. 2255, T.I.A.S. No. 1965, Art. I(2)(c) (1948). There appears to be no case addressing a situation of alleged employment discrimination in which the claim against an individual foreign defendant survives while the claim against a foreign corporate defendant has been dismissed. Moreover, no case specifically addresses the treaty as a defense to a claim of national origin discrimination under the New York state and city human rights laws. Finally, no case addresses the treaty as a defense to a claim of employment discrimination against an Italian company.

In *Goyette v. DCA Advertising Inc.,* 830 F.Supp. 737 (S.D.N.Y.1993), the court analyzed a claim of employment discrimination (under Title VII) by a Japanese company.

In order to accommodate the foreign employer's treaty rights, the court must consider whether or not a position requires the following four factors: (1) Japanese linguistic and cultural skills; (2) knowledge of Japanese products, markets, customers and business practices; (3) familiarity with ... the parent enterprise in Japan; and (4) acceptability to those with whom the company ... does business.

830 F.Supp. at 749 (citing *Avigliano v. Sumitomo Shoji America, Inc.,* 638 F.2d 552, 559 (2d Cir.1981), *rev'd and remanded on other grounds,* 457 U.S. 176, 102 S.Ct. 2374, 72 L.Ed.2d 765 (1982)). The court went on to say that when facing a claim of national origin discrimination, the Japanese company had the burden of proving that national origin is a bona fide occupational qualification of the job from which the plaintiff was fired. *Goyette,* 830 F.Supp. at 749. Defendant Maramoti has presented no evidence that Italian national origin is a bona fide occupational qualification for the position that Robins held at Max Mara USA. Therefore, Maramoti will not be "shielded by the FCN Treaty from the reach of [the anti-discrimi-

**8.** Fashion Group makes the same argument, but has already been dismissed as a defendant.

nation laws]." *Id. See also Adames v. Mitsubishi Bank, Ltd.,* 751 F.Supp. 1548, 1562–63 (E.D.N.Y.1990) (citing *Avigliano* for proposition that "a company seeking to justify the employment of foreign nationals under the [FCN] Treaty [are] required to meet a modified version of Title VII's 'bona fide occupation qualification' exception").

## IV. *Conclusion*

For the foregoing reasons, Defendants' motion to dismiss is granted with respect to Plaintiff's claims for breach of contract, tortious interference, and discrimination under the New Jersey Law Against Discrimination. With respect to Plaintiff's claims under the New York Human Rights Law and the New York City Human Rights Law, the motion is denied, except that Fashion Group is dismissed as a defendant from those claims. Maramoti remains as a defendant for the NYHRL and NYCHRL claims as they are set forth in Plaintiff's original complaint.

SO ORDERED.

## *MEMORANDUM OPINION AND ORDER ON RECONSIDERATION*

Plaintiff has moved for reconsideration [1] of this Court's Opinion and Order of February 7, 1996. Specifically, Plaintiff asks the Court to reconsider its decision to drop Max Mara Fashion Group, SpA ("Fashion Group") as a defendant from the claim of employment discrimination under the New York Human Rights Law ("NYHRL"), N.Y.Exec.Law §§ 290 *et seq.* (McKinney 1993). This decision was based on the Court's determination that Fashion Group was not Plaintiff's employer within the meaning of the statute. *See* Opinion and Order of February 7, 1996 at 18–19. Plaintiff now asks the Court to consider that even if Fashion Group is not liable as an employer under the statute, it may be liable under § 296(6). That section imposes liability on "any person" (which may

include corporations) who aids or incites any type of discrimination forbidden under the NYHRL.

Courts in this district have clearly established the standard for deciding a motion for reconsideration. A court should grant the motion "only if the moving party presents [factual] matters or controlling decisions the court overlooked that might materially have influenced its earlier decision." *Morser v. AT & T Information Systems,* 715 F.Supp. 516, 517 (S.D.N.Y.1989); *see also Violette v. Armonk Assocs., L.P.,* 823 F.Supp. 224, 226 (S.D.N.Y.1993). Moreover, a motion for reconsideration may not be used to plug gaps in an original argument (*see McMahan & Co. v. Donaldson, Lufkin & Jenrette Securities Corp.,* 727 F.Supp. 833, 833–34 (S.D.N.Y.1989)) or "to argue in the alternative once a decision has been made" (*see United States v. Reyes,* 91–CR–56S, 1993 WL 8775, at *1 (W.D.N.Y. Jan. 13, 1993)). Nonetheless, Plaintiff appears to be attempting just that.

In moving to dismiss the complaint, Defendants argued that Fashion Group should be dismissed as a defendant from the claim of employment discrimination because Max Mara, U.S.A., Inc. ("Max Mara") was Plaintiff's employer, not Fashion Group. In his Response, Plaintiff argued that Fashion Group could be considered Plaintiff's employer because (he argued) Max Mara and Fashion Group constituted an integrated enterprise. Plaintiff made no alternative argument in the event that the Court disagreed with his integrated enterprise theory. Now that the Court has so disagreed, Plaintiff seeks to make an alternative argument through a motion for reconsideration. For the reasons described above, such an attempt must fail.

---

1. Actually, Plaintiff has not specified whether he makes his request pursuant to Fed.R.Civ.P. 59(e) (motion to alter or amend a judgment) or under Local Rule 3(j) (motion for reargument). Motions for reconsideration are encompassed by Rule 59(e). *See Ass'n for Retarded Citizens of Connecticut, Inc. v. Thorne,* 68 F.3d 547, 553 (2d Cir.1995). Whatever rule Plaintiff had in mind, I shall treat his request as a motion for reconsider-

ation. In any event, the standards for deciding motions for reconsideration and motions for reargument are the same. *In re New York Asbestos Litigation,* 847 F.Supp. 1086, 1141 (S.D.N.Y. 1994), *aff'd in part, vacated in part on other grounds sub nom. Consorti v. Armstrong World Indus., Inc.,* 72 F.3d 1003 (2d Cir.1995); *Monaghan v. SZS 33 Assocs., L.P.,* 153 F.R.D. 60, 65 (S.D.N.Y.1994).

Plaintiff has presented no new factual matters or controlling decisions that the Court overlooked. Accordingly, Plaintiff's motion for reconsideration is denied.

SO ORDERED.