**Harold ADKINS, on behalf of all other plaintiffs similarly situated, known and unknown, Plaintiffs,**

v.

**MID–AMERICAN GROWERS, INC., a corporation, Defendant.**

**No. 88 C 980.**

United States District Court, N.D. Illinois, E.D.

Sept. 2, 1993.

---

Donald Ray Brewer, Donald R. Brewer, Chtd., Dundee, IL, John William Billhorn, John W. Billhorn, P.C., Jonathan D. Moses, Chicago, IL, for plaintiff Harold Adkins.

Edward W. Bergmann, Camille Annette Olson, Anthony B Byergo, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Douglas Alan Gift, Herbolsheimer, Lannon,

Henson, Duncan & Reagan, P.C., LaSalle, IL, for defendant.

### OPINION AND ORDER

NORGLE, District Judge:

Before the court are cross-motions for summary judgment. For reasons that follow, the court denies both motions.

### FACTS

This litigation arises from a dispute over overtime wages a class of hourly workers at defendant Mid–American Growers, Inc.'s ("Mid–American") greenhouse claim they are entitled under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Harold Adkins filed the action as a representative suit under § 216(b) of FLSA and, after a number of parties opted in the suit, that is how the case has proceeded.[1]

Mid–American owns and operates a twenty-three acre greenhouse in Granville, Illinois where it grows plants for home, office, and garden use. Mid–American produces most of its plants from seed, bulb, plant cutting, and plug/seedling. The record also reflects, however, that some "pre-finished" plants are handled by Mid–American. "Pre-finished" plants are products which begin at another greenhouse, are re-potted by Mid–American, and are grown for several more weeks to maturity before they are sold to the ultimate consumer. Additionally, some large foliage plants and combination planters consisting of multiple varieties of small foliage plants are received by Mid–American; and Mid–American handles empty pots and baskets as well as bags of soil, all of which are sold separately from living plant material.

Mid–American's business is seasonal and its employees perform an assortment of tasks at the greenhouse. The evidence produced by both plaintiffs and defendant demonstrate that the duties of Mid–American's work force are so varied and general in nature that distinguishing duties and product contact as between individual plaintiffs is virtually impossible. The parties have instead designated nine or ten representatives of the plaintiff class and designated six specific job categories. The categories include shipping, general labor, watering/assistant grower, student, shipping/maintenance, and greenhouse coordinator.

It is undisputed that, prior to January 1, 1992, Mid–American did not pay its employees overtime wages for hours worked in excess of forty in a week. Mid–American believed that it was exempt from the overtime requirements of the FLSA because its business is agricultural. *See* 29 U.S.C. § 213(b)(12). Both parties have now filed cross-motions on the issue of liability. The parties primarily address the question of whether the plaintiffs' work was exempt from the FLSA's overtime provisions. If the work was exempt, Mid–American asserts that summary judgment is appropriate in its favor. Plaintiffs contend that the court should grant summary judgment in their favor because they performed non-exempt work during the weeks they performed overtime labor.

### DISCUSSION

■ In an action under the FLSA for overtime wages, the plaintiff must establish a *prima facie* case by showing that he or she worked in excess of forty hours in a workweek. 29 U.S.C. § 207. The plaintiffs' claim is a strong one—Mid–American admits that it did not pay overtime wages during the time-period the plaintiffs worked there, and it is not disputed that plaintiffs worked some overtime. But the plaintiffs must prove their case. In their motion for summary judgment, plaintiffs fail to demonstrate precisely that they worked in excess of forty hours in any given workweek. Further, plaintiffs fail to specify the amount of work performed, the amount of overtime work performed, and the weeks overtime work was allegedly performed. On this basis, the court cannot ascertain the amount of time worked over forty hours. The court must deny the plaintiffs'

---

1. Maybe the statement that the case has since proceeded as a representative suit is disingenuous considering the discovery problems that have arisen in this five-year-old case. *See, e.g., Adkins v. Mid–American Growers, Inc.,* 143 F.R.D. 171 (N.D.Ill.1992); *Adkins v. Mid–America Growers, Inc.,* 141 F.R.D. 466 (N.D.Ill.1992).

motion for summary judgment for failing to establish a *prima facie* case.

Mid–American, however, filed its motion for summary judgment in order to avoid liability. To avoid liability under the FLSA, the employer bears the burden of proving that the employee performed work that is exempt from the FLSA. 29 U.S.C. § 213; *see* 29 C.F.R. §§ 780.2 and 780.10. If, however, during a given work-week employees are engaged in both exempt and non-exempt work, the overtime requirements of the FLSA apply to all work performed in that week. *Marshall v. Gulf & Western Indus., Inc.*, 552 F.2d 124, 126 (5th Cir.1977); 29 C.F.R. § 780.11.

In this case, Mid–American asserts that the plaintiffs were employed in "agriculture" within the meaning of 29 U.S.C. § 213(b)(12) during all relevant weeks. Agriculture is broadly defined as including "farming in all its branches," which in turn includes the "production, cultivation, growing and harvesting of any agricultural or horticultural commodities ... and any practice performed ... as incident to or in conjunction with such farming operations...." 29 U.S.C. § 203(f); *Donovan v. Frezzo Bros., Inc.*, 678 F.2d 1166, 1168–69 (3d Cir.1982). The definition is thus broken down into two types of agriculture: primary agriculture and secondary agriculture. *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762–63, 69 S.Ct. 1274, 1278–79, 93 L.Ed. 1672 (1949). Primary agriculture means all activities which are traditionally considered agricultural like tillage, cultivation, growing, and harvesting. *Marshall*, 552 F.2d at 126. Secondary agriculture is comprised of those activities performed by a farmer or performed on a farm that are incident to or in conjunction with the primary farming operations of that farmer. *Id.* (citing *Farmers Reservoir*, 337 U.S. at 762–63, 69 S.Ct. at 1278–79.) These include preparing products for shipment, maintenance work, and clerical activities. *Hodgson v. Ewing*, 451 F.2d 526, 529 (5th Cir.1971); 29 C.F.R. §§ 780.128 and 780.158.

Because the inquiry is into whether the *employees* performed exempt or non-exempt work, the question in the case is with respect to the frequency of the employees' performance of activities that are not agricultural in nature and not the frequency of Mid–American's involvement in products that may not be agricultural in nature. The focus is on the plaintiffs' contact with goods or performance of duties that can be labelled "not exempt" during weeks in which overtime work was performed. It follows then, that if all work at the Mid–American greenhouse is exempt, then none of the employees at Mid–American performed non-exempt work and summary judgment in favor of Mid–American is appropriate. If, on the other hand, some of the work on the goods handled by Mid–American is not exempt, and there exists a genuine issue of whether plaintiffs engaged in non-exempt work on a given week in which overtime is claimed, then summary judgment is not appropriate. *See* Fed. R.Civ.P. 56(c).

It is undisputed that the majority of Mid–American's business is agricultural of the primary variety. The fact questions relevant to whether the plaintiffs performed other, non-agricultural duties to which the FLSA applies can be broken down into five categories for purposes of determining their legal significance. First, there are the "pre-finished" plant products that Mid–American purchases from other sources and holds for fairly long periods of time prior to resale. Second, there are "finished" flora products which are purchased and held for short periods of time prior to resale. Third, there are "hard goods" which are utilized in conjunction with the products sold by Mid–American. Fourth, there are "hard goods" which are sold separate from those utilized with Mid–American's horticultural products. And fifth, there are the personal services performed for Mr. Van Wingerden, Mid–American's sole shareholder and president.

The mere fact that Mid–American handles plants that are brought in from other sources is not controlling—contrary to plaintiffs' argument. Both the "finished" and "pre-finished" products that are brought in from other sources, whether held for a relatively short period of time prior to resale or not, are purchased by Mid–American. Because title is passed to Mid–American on these

products, Mid–American may not be acting solely as a jobber, warehouser, or retailer with respect to these products. *See, e.g., Wirtz v. Tyson's Poultry, Inc.*, 355 F.2d 255, 259–58, 261 (8th Cir.1966) (making this distinction). If further agricultural activities are being performed on these products, then Mid–American would be dealing with these products as a normal part of its agricultural or horticultural function within the meaning of primary agriculture. *Wirtz v. Tyson's*, 355 F.2d at 261; *Damutz v. William Pinchbeck, Inc.*, 158 F.2d 882 (2d Cir.1946); *see Farmers Reservoir*, 337 U.S. at 761, 69 S.Ct. at 1277. Thus, the exemption would apply when Mid–American further cultivates incoming plants.

If, however, incoming products are immediately resold without any further agricultural work performed on them, as plaintiffs contend, then the exemption does not apply. *See Marshall*, 552 F.2d at 125–26. Mid–American's business with respect to reselling plants that have no further agricultural work performed on them becomes an independent productive activity. *See Farmers Reservoir*, 337 U.S. at 761, 69 S.Ct. at 1277. For example, if mature or substantially mature plants are received and only re-potted for resale, then no horticultural functions are performed on the plants as contemplated by the statute. Mid–American would merely be packaging, preserving, and reselling plants "farmed" by other farmers. Accordingly, the plaintiffs would be entitled to overtime wages for the weeks in which they worked overtime if they performed labor with respect to those "non-exempt" goods.

In making this determination, however, it is necessary to consider all of the facts and circumstances, such as, but not limited to, whether the work performed on the plants is calculated to produce growth, or whether the work is designed to care for and preserve the plants while they are on the grower's premises awaiting resale.[2] Watering, fertilizing, inspecting, cleaning, grooming, and spraying these plants does not, as a matter of law, make the activity primary agriculture without further factual development. Also, work performed on plants purchased from other producers in order to make up for temporary shortages falls within the secondary definition of agriculture and the exemption could still apply. *Wirtz v. Jackson & Perkins Co.*, 312 F.2d 48, 51 (2d Cir.1963).

With respect to the "hard goods," many of these goods, like soil, fertilizer, and planters, may be considered incident to or in conjunction with Mid–American's farming operations and thus considered secondary agriculture if they were utilized with the products grown by Mid–American. *See* 29 C.F.R. §§ 780.137 and 780.141. Nonetheless, some representative plaintiffs have indicated that, on a daily basis, they unloaded or transported goods such as soil, fertilizer, glass and ceramic planters and vases which arrived at the greenhouse, and that these "hard goods" were placed on a customer display shelf or sold directly to customers. Therefore, the use of these products may not have been incident to the growth of Mid–American's plants but were, on the contrary, separate from the farming functions of Mid–American. *See Dozier v. I.W. Chance Nurseries, Inc.*, 80 Lab. Cas. (CCH) ¶ 33,485, 1976 WL 1670 (M.D.Tenn.1976) (sixty percent of sales derived from lawn and garden tools and other non-horticultural supplies; work on these items not incidental and thus not performed within the meaning of secondary agriculture); *see also Dole v. West Extension Irrigation Dist.*, 909 F.2d 349 (9th Cir.1990) (three percent of water handled by irrigation company used for non-agricultural purposes and thus exemption did not apply); *Brennan v. Sugar Cane Growers Cooperative*, 486 F.2d 1006

**2.** The court adopts this position in part because of the United States Department of Labor "Opinion Letter" quoted at length by plaintiff and labelled "Nurseries and Florists Caring for Plants Obtained from Other Growers." *See* Pltf.'s Mem. of Law in Support of Amend. Mot. for Summary Judgment on Issue of Liability at 14. The position taken by the Department of Labor is not only reasonable but appears very appropriate; and the court adopts this approach regardless of whether the court owes this view any deference. *Compare Nationwide Mut. Ins. Co. v. Darden*, —— U.S. ——, —— n. 5, 112 S.Ct. 1344, 1349 n. 5, 117 L.Ed.2d 581 (1992) (noting that parties did not suggest court defer to opinion letter of Department of Labor) *with Biggs v. Wilson*, 1 F.3d 1537, 1541–42 (9th Cir.1993) ("great deference" showed to interpretation given statute by Department of Labor's opinion letter).

(5th Cir.1973) (unquantifiable amount of steam produced by employees was transferred to an adjacent facility and thus defeated exemption).

As for personal services performed by Mid–American employees, those services are akin to maintenance work and clerical activities such that they fall under the definition of secondary agriculture, as long as they are performed on the Mid–American greenhouse premises and for the purpose of improving the Mid–American greenhouse operations.

■ In light of the above discussion, the court finds that there exist genuine issues of fact concerning these issues which precludes summary judgment. *See* Fed.R.Civ.P. 56(c). The facts are not free from dispute as to how long incoming goods remained with Mid–American and as to exactly what type of farming activity, if any, Mid–American employees performed on the "pre-finished" or "finished" plants. Some representative plaintiffs have indicated that they performed work on plants that were mature and immediately resold without any further activity performed on them. Further, some representative plaintiffs have indicated that work was performed daily on the "hard goods" which did not correspond with the agricultural responsibilities of Mid–American's work on its own products or on other primary agricultural work performed on "pre-finished" plants as discussed above, but were sold and utilized separate from the agricultural work as a distinct enterprise. Mid–American, which bears the burden of demonstrating the exemption, has not demonstrated by producing uncontested facts that plaintiffs did not perform work that could be considered "non-exempt." As a result, summary judgment in favor of Mid–American is not appropriate. Protracted discovery has taken place in this case. The assigned magistrate judge has conducted numerous hearings. Both sides have had generous opportunities to develop the facts. Additional discovery into the facts would be unavailing.

■ Another ground for summary judgment urged by Mid–American is based on a *de minimus* theory. That is, because the amount of any non-exempt goods or work at the greenhouse is so minimal, the agricultural exemption should not be destroyed. Mid–American claims that it is not in dispute that one percent of the products sold by Mid–American are non-exempt. Plaintiffs have, nonetheless, disputed this figure. Regardless of the viability of the *de minimus* theory, the court finds that the facts are not undisputed regarding the percentage of work performed at the greenhouse that is not exempt. Because the record is not fully developed with regard to the *de minimus* theory, the court will not reach the issue.

### CONCLUSION

For the above stated reasons, both motions for summary judgment are denied.

IT IS SO ORDERED.