Anu UPADHYAY, Plaintiff,

v.

Neeraj SETHI, Ronica Sethi, Shikha Sethi, and Ganesh Raj, Defendants.

No. 10 Civ. 8462 (NRB).

United States District Court, S.D. New York.

Jan. 25, 2012.

William S. Massey, Amelia K. Tuminaro, Gladstein Reif & Meginniss, New York, NY, for Plaintiff.

Kathleen M. McKenna, Joshua F. Alloy, Proskauer Rose LLP, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, District Judge.

Plaintiff Anu Upadhyay brings this action against defendants Neeraj Sethi ("Mr. Sethi"), Ronica Sethi ("Ms. Sethi," and, together with Mr. Sethi, the "Sethis"), Shikha Sethi ("Dr. Sethi"), and Ganesh Raj, alleging, inter alia, minimum wage and overtime violations of the Fair Labor Standards Act (the "FLSA") and state laws. Presently before us is defendants' partial motion to dismiss or, in the alternative, for summary judgment.

For the reasons set forth herein, defendants' motion is granted in part.

### BACKGROUND [1]

Plaintiff is a non-English-speaking immigrant to this country who has worked for a number of years as a housekeeper and nanny. In December of 1998, she was hired by the Sethis as a live-in domestic service employee, with her responsibilities to include, among other things, cleaning, doing laundry, washing dishes, cooking, and child care. Plaintiff also alleges that she was regularly required to perform massage therapy on Mr. Sethi, as well as on guests to the Sethis' household. Plaintiff lived with the Sethis in their New York City apartment until June 2003, when she moved with them to Princeton, New Jersey and continued her work in the same capacity.

In the fall of that year, plaintiff began working for Dr. Sethi and Raj, relatives of the Sethis, in North Carolina.[2] Plaintiff's responsibilities under her new employers included the same housekeeping duties she performed for the Sethis, but she was not required to perform massage therapy. Dr. Sethi and Raj moved to New York City in June 2004, where they continued to employ plaintiff until July 2007, when they relocated to Texas.

---

1. These facts are derived from the amended complaint and accepted as true for the purposes of the motion to dismiss.

2. Defendants claim that plaintiff lived with Dr. Sethi and Raj in Virginia, not North Carolina. The dispute should be a simple one to resolve, but the Court cannot do so on the evidence before it, and the answer to the question has no bearing on our resolution of either aspect of the instant motion.

Plaintiff also worked for the Sethis in Princeton from July 2004 to July 2007, and again from September 2007 to April 2009, approximately one weekend each month. She alleges that she was required to perform massage therapy during the former period but not the latter.

Plaintiff filed her complaint on November 9, 2010, alleging that she is owed unpaid wages under the minimum wage and overtime provisions of the FLSA and relevant state laws. Defendants have moved to dismiss certain of the claims, or, alternatively, for partial summary judgment, under an exemption provided by the FLSA and applicable statutes of limitations.

### DISCUSSION

### I. Legal Standards

When deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor. *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir.2007). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

A motion for summary judgment is appropriately granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In this context, "[a] fact is 'material' when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir.2007) (internal quotation marks omitted). "In assessing the record to determine whether there is [such] a genuine issue [of material fact] to be tried, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir.2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### II. The FLSA Domestic Services Exemption

The FLSA provides, among other things, that covered employees shall not work more than forty hours in a workweek unless paid at a rate at least one-and-one-half times their normal rate. *See* 29 U.S.C § 207(a)(1). The statute lists a number of occupations that are exempted from this protection, including, relevant to the instant motion, an exemption for "any employee who is employed in domestic service in a household and who resides in such household." *Id.* § 213(b)(21). "Domestic service employment" is defined by regulation as "services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed."[3] 29 C.F.R. § 552.3. That regula-

---

**3.** The Supreme Court has suggested that this definition was, despite its express limitation to another exemption, "meant to supply a definition of 'domestic service employment' for the FLSA as a whole." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 169, 127

S.Ct. 2339, 168 L.Ed.2d 54 (2007); *see also Lott v. Rigby*, 746 F.Supp. 1084, 1087 n. 4 (N.D.Ga.1990) ("[T]he legislative history of 29 U.S.C § 213(a)(15) reveals that Congress used the term 'domestic service employment' interchangeably with the term [ ] 'domestic service

tion also provides an illustrative list of occupations covered by the term, including among others "cooks, waiters, butlers, valets, maids, housekeepers, governesses, nurses, janitors, laundresses, caretakers, handymen, [and] gardeners." *Id.*

Plaintiff does not disagree that she is prima facie covered by the domestic services exemption, having performed household work in private households in which she resided. She argues, however, that the massage work she performed for the Sethis is not "of a household nature" and therefore does not fall within the umbra of this exemption. Further, plaintiff contends that, if she performed any non-exempt work during a given week, all of the work she performed that week must be treated as non-exempt.

### A. Whether Massage Work Is "Of a Household Nature"

■ Massage work is not "of a household nature" and therefore does not constitute "domestic service." It is qualitatively different than cooking, cleaning, gardening, and the other sorts of everyday duties that are performed within a typical household which the regulation says constitute "domestic service."

While it is true that the listing of jobs in Section 552.3 is "illustrative and not exhaustive," "the primary (if not sole) purpose of [that section] is to describe the *kind of work* that must be performed by someone to qualify as a 'domestic service' employee." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007), The picture of

the kind of work that emerges from the listed examples is work that is of primary importance to the normal functioning of a household as a whole, not simply work that provides an indulgence to an individual member of a household.[4] Thus, irrespective of where plaintiff's massage therapy was provided or whatever benefits may accompany it, such therapy does not constitute "domestic service." We believe this determination accords with "the generally accepted meaning of [that] term." 29 C.F.R. § 552.101(a) (internal quotation marks omitted).

### B. The Interaction of Exempt and Non–Exempt Work

However, plaintiff's performance of some non-domestic service does not necessitate that all of her work be treated as non-exempt. Plaintiff asserts that the "default rule" under the FLSA requires that, if any non-exempt work is performed in a given workweek, all work performed that entire week should be treated as non-exempt. The basis of this purported "default rule" is 29 C.F.R. § 780.11, which provides: "Where an employee in the same workweek performs work which is exempt under one section of the Act and also engages in work to which the Act applies but is not exempt under some other section of the Act, he is not exempt that week . . . ."

Section 780.11, however, is not applicable to the instant case. Though phrased in terms of employees generally, the section—as made thoroughly clear by other

in households' . . . ." (citing H.R.Rep. No. 913, 93d Cong., 2d Sess. (1973), 1974 U.S.C.C.A.N. 2811)).

**4.** Defendants' argument that any work performed in an employer's home and for the benefit of a member of that household should qualify for the exemption is not persuasive.

That position reduces the phrase "of a household nature" to "beneficial to a member of a household." Surely the services of a CPA or lawyer would not be subject to the exemption if the professional happened to reside in the household of someone for whom they performed work.

provisions of Part 780—pertains only to employees engaged in agricultural work (and work incidental to agricultural work). *See id.* §§ 780.3(a) ("The specific exemptions which the Act provides for employment in agriculture and in certain operations more or less closely connected with the agricultural industry are discussed in this part 780."), 780.4 ("The application of provisions of the Fair Labor Standards Act other than the exemptions referred to in § 780.3 is not considered in this part 780."), 780.9 ("The interpretations contained in the several subparts of this part 780 consider separately a number of exemptions which affect employees who perform activities in or connected with agriculture and its products."). There is, therefore, no regulatory basis on which to deem a workweek that otherwise falls within the domestic services exemption non-exempt because of the performance of some non-exempt work.[5]

Nor is there a persuasive judicial basis on which to extend this rule to non-agricultural exemptions. The Second Circuit has never addressed the issue, and we are aware of only two, unpublished decisions in this Circuit that have adopted plaintiff's position. The earlier of those decisions is *Marshall v. Intraworld Commodities Corp.*, No. 79 Civ. 918, 1980 WL 2097, 1980 U.S. Dist. LEXIS 13325 (E.D.N.Y. June 9, 1980). *Marshall* addresses the issue in only a single conclusory sentence, which is supported by only a single citation to an agricultural case. *Id.* at *4, 1980 U.S. Dist. LEXIS 13325, at *10 (citing *Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 411 (5th Cir.1975) (discussing the "agricultural exemption")). The more recent of the two, *Astudillo v. U.S. News & World Report*, No. 02 Civ. 7902, 2004 WL 2075179, at *2–3, 2004 U.S. Dist. LEXIS 18685, at *7–8 (S.D.N.Y. Sept. 17, 2004), provides no more comprehensive a discussion. Although its lone sentence asserting the applicability of the rule is supported by three citations—a dissent from a Ninth Circuit decision, *McCune v. Or. Senior Servs. Div.*, 894 F.2d 1107, 1113–14 (9th Cir.1990) (Pregerson, J., dissenting), an agricultural case, *Adkins v. Mid–Am. Growers, Inc.*, 831 F.Supp. 642, 645 (N.D.Ill.1993), and *Marshall*—they have no greater persuasive force. Perhaps needless to say, we do not feel bound to proceed as these decisions have.

We turn, rather, to the wording of the statute to determine the appropriate treatment of work falling within the domestic service exemption performed in the same week for the same employer as some non-exempt work. The FLSA provides that "any employee who *is employed in domestic service* in a household and who resides in such household" is exempt from the overtime provisions. 29 U.S.C. § 213(b)(21) (emphasis added). The question we must ask is thus whether plaintiff engaged in so much non-domestic-service work that she is not fairly characterized as having been "employed in domestic service." [6]

Relevant to this inquiry are plaintiff's allegations of the frequency with which she performed massage work for defendants relative to the total amount of

---

5. Plaintiff's citation to 29 C.F.R. § 776.4(a) is inapposite. The section describes only how to treat a situation where an employee performs both work that is covered by the FLSA and work that is not covered by the FLSA. It does not address the instant situation, where the work at issue is covered by the FLSA but some of it is non-exempt and the remainder is exempt.

6. The FLSA's definition of "employ"—"to suffer or permit to work"—does not shed much light on this exercise. 29 U.S.C. § 203(g).

time she worked for them.[7] Plaintiff's amended complaint includes a laundry list of domestic and childcare duties for which she was responsible seven days a week and notes that she performed massage therapy as part of those responsibilities "several times each week." (Am. Compl. ¶¶ 11–14, 29.) She also alleges that the entirety of her work load demanded "in excess of seventy-five hours per week" when working for the Sethis in New York, and "in excess of seventy hours per week" when working for the Sethis in New Jersey and for Dr. Sethi and Raj in New York, with trips to New Jersey. (Am. Compl. ¶¶ 15, 26, 47.)

These allegations depict plaintiff's massage work for the Sethis as being insignificant in comparison to the multitude of domestic tasks she was required to perform. We do not believe that a de minimis amount of work that does not fall within the ambit of "domestic service" should thereby disqualify an employer from utilizing the protections provided by the FLSA. *Cf.* S. Rep. 690, 93d Cong., 2d Sess., at 20 (1974) ("[T]he fact that a person employed as a cook, maid, housekeeper, etc. may also have duties relating to [activities not generally included in "domestic service"] does not remove the person from the category of a domestic service employee."); *Adams v. Dep't of Juvenile Justice,* No. 93 Civ.

8042, 1996 WL 82404, at *4, 1996 U.S. Dist. LEXIS 2128, at *10–11 (S.D.N.Y. Feb. 26, 1996) ("These [domestic service] exemptions are designed to protect household employers, that is, . . . individuals who employ live-in domestic employees in their homes." (citing U.S. Dep't of Labor Ltr. Ruling (WH–368) (Nov. 25, 1975))), *vacated on other grounds,* 143 F.3d 61 (2d Cir.1998). Had plaintiff dropped a package off for Dr. Sethi and Raj (assuming that couriering is not a "domestic service," *cf.* 29 C.F.R. § 551.8(e)), a normal favor for someone in plaintiff's position, that small act would not have warranted recharacterizing an entire week's worth of her work. Plaintiff's massage work should be treated no differently.[8]

Plaintiff's FLSA claim for overtime compensation is dismissed.

## III. Statutes of Limitations

Defendants also argue that much of plaintiff's complaint is barred by the applicable statutes of limitations.[9] Plaintiff acknowledges that her employment by defendants extends beyond those statutes of limitations, but she argues that they should be equitably tolled because she was unaware of the existence of any cause of action until 2010.

7. Plaintiff's bare allegation that "[s]he worked for defendants as a live-in nanny, housekeeper, cook, and masseuse," (Am. Compl. ¶ 6), is the type of "conclusion [] of law or unwarranted deduction[] of fact" that we need not accept as true on a motion to dismiss. *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994) (internal quotation marks omitted). The inclusion of "masseuse" as the last listed item, however, is telling that plaintiff does not conceive of that role as having been her primary one.

8. We note, too, that plaintiff's suggested treatment would have the effect of undoing one of

Congress's express reasons for exempting live-in domestic servants from the overtime provision: circumventing the difficulty in determining the exact number of hours such employees work. *See* S. Rep. 690 at 21.

9. The statute of limitations on FLSA claims is two years, or three years if defendants' violation was willful. *See* 29 U.S.C § 255(a). The New York State statute of limitations for minimum wage and overtime claims is six years, *see* N.Y. Lab. Law §§ 198(3), 663(3), and the analogous New Jersey State statute of limitations is two years, *see* N.J. Stat. Ann. § 34:11–56a25.1.

## A. Equitable Tolling

■ "Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Veltri v. Bldg. Serv. 32B–J Pension Fund*, 393 F.3d 318, 322 (2d Cir.2004); *see also Doe v. Holy See (State of Vatican City)*, 17 A.D.3d 793, 793 N.Y.S.2d 565, 569 (3d Dep't 2005) (requiring "acts by defendants that prevented [plaintiff] from timely commencing suit"); *Freeman v. New Jersey*, 347 N.J.Super. 11, 788 A.2d 867, 879–80 (N.J.Super.Ct.App.Div.2002) (noting that equitable tolling is appropriate where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass" or "where a plaintiff has in some extraordinary way been prevented from asserting his rights" (internal quotation marks omitted)); *Town of Pineville v. Atkinson/Dyer/Watson Architects, P.A.*, 114 N.C.App. 497, 442 S.E.2d 73, 75 (1994) (requiring that plaintiff's delay have "been induced by [defendants'] acts, representations, or conduct, the repudiation of which would amount to a breach of good faith" (internal quotation marks omitted)). Plaintiff bears the burden of demonstrating that equitable tolling is appropriate. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005).

■ The FLSA and analogous state laws require employers to post notices explaining wage and hour requirements, *see* 29 C.F.R. 516.4; N.Y. Comp.Codes R. & Regs. 12 § 142–2.8; N.J.S.A. § 34:11–56a21, and the failure to do so is an important factor in determining the propriety of equitable tolling. *See Veltri*, 393 F.3d at 324 (in the ERISA context, "failure to comply with the regulatory obligation to disclose the existence of a cause of action . . . is the type of concealment that entitles plaintiff to equitable tolling of the statute of limitations"). But such a failure is not by itself sufficient to warrant equitable tolling; plaintiff must also show that she had not received notice of her rights through any other avenue. *See Lanzetta v. Florio's Enters., Inc.*, 763 F.Supp.2d 615, 622–23 (S.D.N.Y.2011) (failure to post will not justify equitable tolling if plaintiff was otherwise aware of her claims); *Saunders v. City of New York*, 594 F.Supp.2d 346, 363–64 (S.D.N.Y.2008) ("[A] failure to post alone does not necessitate equitable tolling. If plaintiffs knew of the rights outlined on the required notice despite the failure to post, then equitable tolling is unavailable." (footnote omitted)); *cf. Yu G. Ke v. Saigon Grill, Inc.*, 595 F.Supp.2d 240, 259–60 (S.D.N.Y.2008) (finding equitable tolling appropriate when defendants "did not comply with this notice requirement, and made no effort to provide any other form of notice to the plaintiffs about their rights and the requirements of the FLSA").

■ The resolution of this issue is thus heavily dependent on the facts of the case and cannot be decided on a motion to dismiss. Defendants, recognizing this, have moved in the alternative for partial summary judgment,[10] and the parties have accordingly submitted numerous dueling

---

**10.** Nevertheless, defendants failed to file a Rule 56.1 Statement of Material Pact in accordance with the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. Although we may deny the motion for partial summary judgment on that ground alone, *see* Local Rule 56.1(a), we decline to do so. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir.2001) (noting district courts' "broad discretion to determine whether to overlook a party's failure to comply with local court rules").

affidavits asserting and counter-asserting sequences of events and the truth of various matters. For instance, Mr. Sethi's affidavit claims that he explained the wage and hour laws to plaintiff "on numerous occasions," that he discussed the wage and hour poster with her in her native language, and that plaintiff told him of a wage and hour lawsuit filed by a friend of hers in 2004 or 2005. (Aff. of Neeraj Sethi ¶¶ 4–6.) Plaintiff's affidavit specifically denies each of these assertions. (Aff. of Anu Upadhyay ¶¶ 5–7.) Ms. Sethi's affidavit asserts that in 1999 or 2000 plaintiff was visited by representatives of a workers' rights organization who told her about the minimum wage and overtime laws and that she frequently socialized with other nannies who were members of another such organization. (Aff. of Ronica Sethi ¶¶ 7–8.) Plaintiff again denies the claims, asserting that the organization's representatives did not discuss the relevant laws with her, that the Sethis interrupted the meeting and discouraged plaintiff from talking to the representatives, and that plaintiff never discussed a workers' rights organization with other nannies. (Aff. of Anu Upadhyay ¶¶ 11–12.)

Resolving these differing versions of the events into a coherent whole involves assessments of the parties' credibility and choosing between conflicting narratives, which the Court is unable to do solely on the basis of affidavits. Summary judgment on the issue of equitable tolling, and therefore on the applicability of the statutes of limitations, is thus inappropriate on the evidence before us.

### B. Evidentiary Hearing

Defendants, perhaps anticipating the inevitability of this conclusion, have requested an evidentiary hearing to resolve the issue of equitable tolling prior to engaging in extensive discovery. Plaintiff maintains that the appropriateness of equitable tolling is an issue properly reserved for the jury or, at the very least, is so intertwined with factual disputes going to the merits of this case that the Court would necessarily be impinging upon the province of the jury if it resolved the equitable tolling issue.

■ Questions pertaining to matters of equity, including the applicability of equitable tolling to statutes of limitations, are well within the ambit of the Court's authority to resolve. See Mandarino v. Mandarino, 180 Fed.Appx. 258, 261 (2d Cir.2006) (noting that "the District Court would act well within its discretion on remand if it required plaintiff to [demonstrate its grounds for equitable tolling] before proceeding further with the case"). We acknowledge that there may be a certain tension in Second Circuit case law between this principle and the principle that, when a statute of limitations is used as an affirmative defense, "issues of fact as to the application of that defense must be submitted to the jury." Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 242 n. 2 (2d Cir.1984). That tension, however, is not implicated where, as here, "there is no legal or factual dispute concerning the application of the statute of limitations" and "[t]he factual disputes to be resolved relate only to whether the equitable doctrines at issue should be applied to render [plaintiff's] failure to act sooner harmless to [her] case." Pauling v. Sec'y of the Dep't of Interior, 71 F.Supp.2d 231, 233 (S.D.N.Y.1999) (acknowledging the potential tension but declining to have the jury decide the applicability of equitable tolling); see also Jacobsen v. Stop & Shop Supermarket Co., No. 02 Civ. 5915, 2004 WL 1918795, at **2–4, 2004 U.S. Dist. LEXIS 17031, at **9–13 (S.D.N.Y. Aug. 30, 2004) (determining the applicability of equitable tolling).

Plaintiff argues in the alternative that the Court must preserve the question of whether the statutes of limitation should be equitably tolled for the jury because, to answer that question, we must resolve issues that go to the merits of the case, thereby invading the province of the jury. *See Heyman v. Kline,* 456 F.2d 123, 130 (2d Cir.1972) ("[W]hen legal and equitable claims are tried together, common questions of fact must be decided by the jury in order to preserve the integrity of the seventh amendment guarantee."). If, however, "the facts surrounding the question of tolling ... are entirely distinct from those facts underlying [plaintiff's] legal claims," then "there is no danger of the Court reaching any issues that will be squarely before the jury if the case proceeds to trial." *Pauling,* 71 F.Supp.2d at 233; *cf.* 8 Moore's Federal Practice § 38.34 (3d ed. 2010) (discussing procedural matters, including among others jurisdiction and venue, that may be decided by the court rather than a jury when they do not intermesh with the merits of the case).

We believe that the merits issues in this case—whether, when, and how much plaintiff was paid, and how much she was owed—are divorced from the questions that need to be answered in order to resolve the applicability of equitable tolling, i.e. whether plaintiff was aware of her rights, whether defendants affirmatively prevented her from timely bringing her causes of action, and whether plaintiff acted with reasonable diligence in discovering her rights. Plaintiff as much as conceded the same at oral argument on this motion. (Tr. of Oral Arg. 9:11–18 ("THE COURT: Having now in my view essentially put willfulness off the table, are there other factual issues that I would have to decide in the context of equitable estoppel that would fall over into the merits issues in a way that if I decided them in the context of a hearing would impinge on the plain-

tiff's jury trial? [PLAINTIFF'S COUNSEL]: I don't believe there are.").)

Yet we remain cognizant of the importance of preserving the integrity of the Seventh Amendment and are therefore wary of committing ourselves to a course of action which could impinge its guarantees. Balancing that concern with our mandate to seek the "just, speedy, and inexpensive determination of every action and proceeding," Fed.R.Civ.P. 1, we will conduct an evidentiary hearing while reserving a final determination as to whether the equitable tolling issue overlaps with merits questions to be resolved by a jury. This intermediate approach affords the parties "a relatively inexpensive and expeditious opportunity" to test plaintiff's equitable tolling claims, *Unicon Mgmt. Corp. v. Koppers Co.,* 38 F.R.D. 474, 477 (S.D.N.Y.1965), while ensuring that plaintiff's rights are given due protection.

The parties shall engage in targeted discovery prior to that hearing, limited solely to the questions listed above as pertinent to the resolution of the issue. The parties shall confer with each other and agree upon a discovery schedule within one week of the entry of this order.

## CONCLUSION

For the foregoing reasons, the motion (docket no. 13) is granted in part.