OPINION OF THE COURT
Katherine A. Levine, J.
This case comes before this court on defendant law firm Abrams, Fensterman, Fensterman, Flowers, Greenberg & Eisman, LLP’s motion for reconsideration. As one of its arguments, defendant contends that plaintiff Vincent Jackson cannot be considered an employee under the Family and Medical Leave Act (FMLA). For the reasons stated below, this court grants defendant’s motion for reconsideration and its motion for summary judgment dismissing the complaint.
By decision dated January 12, 2016, this court granted defendant partial summary judgment dismissing Jackson’s claims under both the New York State Human Rights Law (Executive Law § 290 et seq. [State HRL]) and the New York City Human Rights Law (Administrative Code of City of NY § 8-101 et seq. [City HRL]).[1] The court found that the law firm’s managing partner, Howard Fensterman (Fensterman), rather than the firm, was plaintiff’s actual employer under the State and City HRLs, and that as a personal chauffeur to Fensterman, plaintiff performed the type of domestic service excluded from the definition of employee pursuant to Executive Law § 292 (6). This court also addressed, for the first time,[2] plaintiff’s claim that the law firm improperly terminated him as a chauffeur/ driver after he was hospitalized to insert a stent, in violation of the Family and Medical Leave Act (29 USC § 2601 et seq.). The *402 court noted that this case presented the novel issue of whether the work that Jackson performed solely for Fensterman, who was not individually sued,[3] might still be attributable to the firm since Fensterman was the managing partner and principal of the firm.
The court first found that the definition of an employer under the FMLA was broader than under the HRL as it included the term “any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer.” (See 29 USC § 2611 [4] [A] [ii] [I]; [i]-[iv].) The FMLA and the Fair Labor Standards Act (FLSA) contain equivalent definitions of employer, and the Department of Labor regulations interpreting the FMLA (29 CFR 825.104 [d]) stated that the courts should look to the FLSA (29 USC §§ 201-219) for guidance in construing the term “employer” under the FMLA. (Cf. Zheng v Liberty Apparel Co. Inc., 355 F3d 61, 77 n 15 [2d Cir 2003] [given this identical language, the courts, in determining whether a joint employment relationship exists under FMLA, borrow directly from the FLSA’s joint employment case law].) The court then noted that the courts have adopted an expansive interpretation of the term employer with “striking breadth” under the FLSA (Guobadia v Irowa, 103 F Supp 3d 325, 337 [ED NY 2015], citing Nationwide Mut. Ins. Co. v Darden, 503 US 318, 326 [1992]; Falk v Brennan, 414 US 190, 195 [1973]; Herman v RSR Sec. Servs. Ltd., 172 F3d 132, 139 [2d Cir 1999]; Johnson v A.P. Prods., Ltd., 934 F Supp 625, 628 [SD NY 1996]), and that exemptions from FLSA coverage are “to be narrowly construed against the employers seeking to assert them.” (Hallissey v America Online, Inc., 2006 US Dist LEXIS 12964, *13-14 [SD NY, Mar. 10, 2006, 99-CIV-3785 (KTD)].)
This court then cited to the “economic realities” test, employed by the Second Circuit, under which a number of factors are considered in determining whether an entity is an employer, including whether the alleged employer (1) had the power to hire and terminate the employee; (2) supervised and controlled the employee’s work schedule or conditions of employment; (3) set the rate and method of payment; and (4) maintained employment records. (See Herman v RSR Sec. Servs. Ltd., 172 F3d at 139; Housel v Rochester Inst. of Tech., 6 F Supp 3d 294, 315 [WD NY 2014]; Noia v Orthopedic Assoc. of *403 Long Is., 93 F Supp 3d 13, 16-17 [ED NY 2015]; Singh v New York State Dept. of Taxation & Fin., 911 F Supp 2d 223, 242 [WD NY 2012].) Under the economic realities test, the totality of the circumstances must be considered to “avoid having the test confined to a narrow legalistic definition.” (Herman, 172 F3d at 139; see Astudillo v US News & World Report, 2005 WL 23185, *1, 2005 US Dist LEXIS 92, *3-4 [SD NY, Jan. 6, 2005, No. 02 Civ 7902(WHP)].) While no single factor is controlling (Zheng v Liberty Apparel Co. Inc., 355 F3d 61, 72 [2d Cir 2003]), the overarching consideration is whether the entity “possessed the power to control the workers in question.” (Herman v RSR Sec. Servs. Ltd., 172 F3d 132, 139 [2d Cir 1999]; see Astudillo v US News & World Report, 2004 WL 2075179, 2004 US Dist LEXIS 18685 [SD NY, Sept. 17, 2004, No. 02 Civ 7902(WHP)].) Day-to-day personnel decisions and the authority to make determinations related to leave under an employer’s own policies or the FMLA are also relevant. (Singh v New York State Dept. of Taxation & Fin., 911 F Supp 2d at 242.)
This court then reviewed the closest case on point to the instant matter, Astudillo v US News & World Report (2004 WL 2075179, 2004 US Dist LEXIS 18685 [SD NY, Sept. 17, 2004, No. 02 Civ 7902(WHP)]), where the court considered whether a corporate defendant was an “employer” under the FMLA even though the employee was hired to perform domestic services for an individual who owned many corporate entities. (See Jackson II, 52 Misc 3d at 191-192.) Zuckerman, through his executive assistant Osborne, hired plaintiff (Astudillo) to work as his personal assistant and house manager in his private residence. Osborne was both a personal and professional assistant to Zuckerman and received two checks—one from Zuckerman and the other from US World News for his work in two capacities. Astudillo admitted that she performed many domestic functions at the private home including “ordering Zuckerman’s medications, fixing fruit bowls, walking his dog, making beds.” (2004 WL 2075179, *1, 2004 US Dist LEXIS 18685, *3.) However, she also acted as Zuckerman’s “receptionist” by answering his phones, recording messages for him, keeping files of those messages and confirming his schedule. (Id.) Similar to the instant case, Zuckerman initially paid plaintiff with a personal check but then plaintiff began to receive her paychecks from US News. (2004 WL 2075179, *1, 2004 US Dist LEXIS 18685, *4.) Zuckerman also asserted that it was “an administrative decision” to pay his household staff from *404 corporate accounts and that he personally reimbursed two of his corporations for his residence staff salaries. (Id.)
Without ruling on US News’ argument that plaintiff’s maintenance on the corporate payroll was purely ministerial, the court focused on whether US News did, in fact, exercise a degree of control over plaintiff’s employment since plaintiff requested and was granted maternity leave from US News under its family leave policy. (2004 WL 2075179, *3, 2004 US Dist LEXIS 18685, *10-11.) Furthermore, plaintiff received some of her instructions from Osborne who worked for and was paid by US World News. (2004 WL 2075179, *3, 2004 US Dist LEXIS 18685, *12.) These factors led the court to conclude that there were material issues of fact concerning whether US News was her employer under the FMLA. (2004 WL 2075179, *4, 2004 US Dist LEXIS 18685, *12.)
Based upon the Astudillo case, this court concluded that under the economic realities test, a genuine issue of fact still exists as to whether the firm is Jackson’s employer under the FMLA. (Jackson II, 52 Misc 3d at 192.) The record developed to date was not clear as to whether Fensterman always exercised control over Jackson in his capacity as a private entity as opposed to as the principal of the firm. It appeared that at least one of the activities that Fensterman had plaintiff perform on the job could be construed as directly accruing to the interest of defendant firm. Fensterman’s primary responsibilities are “running the business affairs of the law firm” and some litigation. Furthermore, Fensterman explicitly stated in his deposition that one of his responsibilities as managing partner is to ensure that the firm is paid. He would call clients and if the clients were not paying him he would “literally personally . . . go in my car and pick up a check. So instead of me going to pick up the check. I would tell Lloyd [what he called plaintiff] to go pick up the check for me.” (Deposition tr at 40-41.) Fensterman then seemed to modify this declaration by stating that “he never ultimately—there was some contemplation—because he was sitting in his car all day while he was working for me out in front of the building.” (Id.) Additionally, similar to the Astudillo case, Fensterman transmitted instructions to Jackson at times through Lorraine Takesky who had a dual role at the firm, as both the firm and his personal comptroller.
As managing partner, Fensterman apparently did not have to obtain permission from the firm to give Jackson health in-sur- *405 anee. Nor did he ever discuss with the partners the financial arrangements he made with Jackson prior to employing him, including that the firm pay part of Jackson’s salary and his health insurance. The court took at face value Fensterman’s generosity in deciding to have the firm pay part of Jackson’s salary so that Jackson could also be covered by the firm’s medical insurance policy, and also his decision to have Jackson’s health insurance extended under the Consolidated Omnibus Budget Reconciliation Act for 2.5 months. These factors, standing alone, would not make the firm Jackson’s employer. (52 Misc 3d at 193.)
This court concluded that until the record is clarified as to whether Jackson performed some work for Fensterman in his capacity as managing partner, and whether this work directly benefitted the firm, it could not rule on the summary judgment motion seeking dismissal on the ground that the firm is not an employer under the FMLA. As such, this court directed that this matter proceed to a hearing on this narrowly framed issue wherein the parties would also clarify who, if anyone, at the firm filled out the Department of Labor Unemployment Insurance Division forms. (52 Misc 3d at 193-194.)
Defendant moved for reconsideration/reargument on the sole remaining claim regarding the FMLA and, upon reargument, for summary judgment because “the firm cannot be considered to be Jackson’s employer and cannot be held liable under the FMLA as a matter of law.” Plaintiff opposed this motion and cross-moved for reconsideration of that part of the court’s decision which dismissed the claims brought under the City and State HRLs. This court denied plaintiff’s motion at the onset of the hearing.
Defendant set forth a plethora of arguments concerning why the Astudillo case was distinguishable and why, under any reading of the facts, the firm did not exercise control over Jackson’s work. However, this court need not revisit the issue of whether Fensterman, while acting in his capacity as managing partner of the firm, was an agent or alter ego of the firm when he directed Jackson to perform work that inured to the benefit of the firm. In its brief and during oral argument, defendant asserted that as a matter of law, Jackson cannot be considered an “employee” for FMLA purposes, since neither he nor Fensterman asserted in their examinations before trial that Jackson worked the requisite number of hours to even be eligible for FMLA purposes.
*406 To be an “eligible employee” under the FMLA, an employee must have been employed “(i) for at least 12 months by the employer with respect to whom leave is requested . . . and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period.” (29 USC § 2611 [2] [A]; Smith v Westchester County, 769 F Supp 2d 448, 465 [SD NY 2011]; see also Woodford v Community Action of Greene County, Inc., 268 F3d 51, 54 [2d Cir 2001].) Pursuant to 29 CFR 825.110 (d), the “determination of whether an employee ... [is eligible] must be made as of the date the FMLA leave is to start.” “Eligibility is a threshold issue” and it is insufficient for a plaintiff to “merely assert[ ] in a conclusory manner that he is eligible without stating any facts that relate to the definition of an eligible employee.” (Smith v Westchester County, 769 F Supp 2d at 465; Spurlock v NYNEX, 949 F Supp 1022, 1033 [WD NY 1996].) Simply alleging that the employee was “employed full-time” is not enough to establish the 1,250 hour requirement. (Simmons v New York City Tr. Auth., 2001 WL 984905, *2, 2001 US Dist LEXIS 12170, *5 [ED NY, July 6, 2001, No. Civ A CV96-3414 (DGT)] [internal quotation marks omitted].)
During the hearing this court inquired what proportion of an employee’s work during the 12-month period must be nonexempt, i.e., work for the employer which is covered under the act, in order for the employee to accrue the requisite 1,250 hours of service. Although there are no cases brought under the FMLA that specifically address this issue, guidance can be garnered from the few cases decided under the FLSA. In drafting the FMLA, Congress adopted by cross-reference the definition of “employee” in the FLSA. (Alexander v Avera St. Luke’s Hosp., 768 F3d 756, 763 [8th Cir 2014].) 29 USC § 2611 (3) provides that for purposes of the FMLA, the terms “employ” and “employee” have the same meaning as given in 29 USC § 203 (e) and (g), the definitions section of the FLSA. (See Mendel v City of Gibraltar, 727 F3d 565, 569 [6th Cir 2013].) The FLSA generally defines “employee” as “any individual employed by an employer.” (29 USC § 203 [e] [1].)
The FMLA also refers to the FLSA in order to determine whether an employee meets the hours of service requirements contained in the FMLA. 29 USC § 2611 (2) (C) provides that the “legal standards established under [section 7 of the Fair Labor Standards Act of 1938 (29 USC § 207)] shall apply” in determining whether an employee has met FMLA hours of service requirements. (See Donnelly v Greenburgh Cent. Sch. *407 Dist. No. 7, 691 F3d 134, 141-142 [2d Cir 2012]; Mutchler v Dunlap Mem. Hosp., 485 F3d 854, 857 [6th Cir 2007] [“In calculating the ‘hours of service,’ the Act (FMLA) incorporates by reference the legal standards set forth in § 7 of the Fair Labor Standards Act (‘FLSA’), 29 U.S.C. § 207”].) While neither the FMLA nor the FLSA actually define the term “hours of service,” the FMLA’s implementing regulations clarify that “[t]he determining factor is the number of hours an employee has worked for the employer within the meaning of the FLSA . . . Any accurate accounting of actual hours worked under FLSA’s principles may be used.” (29 CFR 825.110 [c] [1]; see Saulsberry v Federal Express Corp., 552 Fed Appx 424, 429 [6th Cir 2014]; Plumley v Southern Container, Inc., 303 F3d 364, 372 [1st Cir 2002] [looking to 29 USC § 207, court held that “hours of service” as used in the FMLA, “include only those hours actually worked in the service and at the gain of the employer”].)
Given the aforementioned paradigm, the court must look at the most analogous sections of the FLSA in order to determine what proportion of Jackson’s work during the 12-month period had to be nonexempt in order for him to accrue 1,250 eligible hours for FMLA coverage. The FLSA mandates that hourly workers be compensated at a rate 1.5 times the regular rate for hours worked in excess of 40 hours per workweek. (29 USC § 207 [a] [1].) The FLSA contains a similar exemption for domestic workers. (Fezard v United Cerebral Palsy of Cent. Ark., 2014 WL 11516094, 2014 US Dist LEXIS 188434 [ED Ark, Oct. 15, 2014, 4:13CV00206JM]; Upadhyay v Sethi, 848 F Supp 2d 439 [SD NY 2012].) In 1974, Congress extended the FLSA to include persons employed in domestic service in a household, but exempted certain domestic service employees from its minimum wage and overtime protection where said employees provided companionship services for individuals who were “unable to care for themselves.” (29 USC § 213 [a] [15] [“companionship services” exemption]; see Fezard, 2014 WL 11516094, *2-3, 2014 US Dist LEXIS 188434, *5-6; Clopton v TSS, Inc., 2011 WL 346478, 2011 US Dist LEXIS 10196 [D Kan, Feb. 2, 2011, No. 10-1229-JAR-JPO].) While the statute itself does not define these terms, the Department of Labor regulations define “domestic service employment” as “services of a household nature performed by an employee in or about a private home (permanent or temporary)” of the person by whom he or she is employed. (29 CFR 552.3.) The regulations list as *408 illustrative of this category valets, butlers, housekeepers, and caretakers. (Id.; see Upadhyay v Sethi at 442.) This exemption might also include drivers. (See De Veyra Palana v Mission Bay Inc., 2015 US Dist LEXIS 88091 [ND Cal, July 7, 2015, Case No. 13-cv-05235-SI].)
There appears to be only one case which addresses what percentage of time an exempt employee must work in a nonexempt capacity in order to be covered by the FLSA.[4] In Upadhyay v Sethi, the plaintiff was hired by the Sethis as a live-in domestic service employee whose responsibilities included a panoply of activities normally considered to be exempt from the FLSA, and the performance of massage therapy upon Mr. Sethi. Plaintiff filed a complaint alleging that she was owed unpaid wages under both the minimum wage and overtime provisions of the FLSA. While not disagreeing that she was prima facie covered by the domestic services exemption, since she performed household work in a private household where she was a resident, plaintiff contended that the massage work she performed for the Sethis was not of a “household nature” and hence not exempt from FLSA coverage. She also argued that if she performed any nonexempt work during a given week, then all of the work she performed during the week had to be treated as nonexempt. (848 F Supp 2d at 442.)
After ruling that massage therapy, regardless of where it is performed, does not constitute “domestic service” (id.), the court found that plaintiff’s performance of some non-domestic services “does not necessitate that all of her work be treated as non-exempt.” (Id.) The court first found that the so-called “default rule” under the FLSA (29 CFR 780.11), which provides that if an employee in the same workweek performs both exempt and nonexempt work under the FLSA, then he is considered nonexempt, was inapplicable. While the default rule utilized the generic term “employee,” the court found that since it was included within part 780, which pertains only to *409 employees engaged in agricultural work and work incidental thereto, it was inapplicable to domestic workers. Therefore, there was "no regulatory basis on which to deem a workweek that otherwise falls within the domestic services exemption non-exempt because of the performance of some non-exempt work.” (848 F Supp 2d at 443; see also 29 CFR 780.0 [“Purpose of interpretative bulletins in this part,” which limits that section’s meaning and applicability to the exemption of “certain employees from the minimum wage or overtime pay requirements . . . when employed in agriculture or in certain related activities . . . with respect to agricultural or horticultural commodities”].)
The court also held that there was no judicial basis upon which to extend the default rule to nonagricultural exemptions. (848 F Supp 2d at 443.) The Second Circuit never addressed the issue and the two unpublished district court decisions adopting plaintiffs position consisted of either one single citation to an agricultural case (Marshall v Intraworld Commodities Corp., 1980 WL 2097, 1980 US Dist LEXIS 13325 [ED NY June 9, 1980, No. 79 C 918]) or contained no comprehensive discussion (Astudillo v US News & World Report, 2004 WL 2075179, *2, 2004 US Dist LEXIS 18685, *7-8 [where the court cited three cases from other circuits for the general proposition that “(w)here an employee performs both exempt and nonexempt duties, all of the work is treated as non-exempt”]). The Upadhyay court then declared that it was not bound to proceed by these decisions. (848 F Supp 2d at 443.) Rather, looking to the wording of 29 USC § 213 (b) (21), which provides that “any employee who is employed in domestic service in a household and who resides in such household” is exempt from the overtime provisions, the relevant inquiry was “whether plaintiff engaged in so much non-domestic-service work that she is not fairly characterized as having been ‘employed in domestic service.’ ” {Id. [emphasis added].)
The complaint included a laundry list of domestic and childcare duties for which plaintiff was responsible seven days a week and noted that “she performed massage therapy as part of those responsibilities ‘several times each week.’ ” {Id. at 443-444.) The court found that the frequency with which plaintiff performed the massage work for defendants was “insignificant” in comparison to the total amount of time she performed “the multitude of domestic tasks she was required to perform.” {Id. at 444.) The court concluded that “a de *410 minimis amount of work that does not fall within the ambit of ‘domestic service’ should [not] disqualify an employer from utilizing the protections provided by the FLSA.” (Id.) As an example, which aptly applies to the instant matter, the court noted that had the plaintiff dropped off a package for Dr. Sethi, “a normal favor for someone in plaintiff’s position, that small act would not have warranted recharacterizing an entire week’s worth of her work” (Id.).
Jackson does not dispute this court’s finding that his primary duties were to drive Fensterman back and forth from work and take him to appointments during the day, all of which fell within the realm of a personal chauffeur. In fact, during oral argument on the motion for reconsideration, plaintiff’s counsel conceded that Jackson’s collection of checks for the firm constituted a minute portion of the otherwise exempt work that he performed for Fensterman. Additionally, plaintiff’s counsel admitted during oral argument, and plaintiff’s deposition clearly revealed that he rarely performed any xeroxing work for Lorraine Takesky. As such, plaintiff has failed to prove that he engaged in so much work for the firm that he could not fairly be characterized as having been employed as a personal chauffeur for Mr. Fensterman. Thus, any work that Jackson performed that inured to the benefit of the firm was incidental to his overall work as the personal chauffeur to Fensterman and, under the aforementioned FLSA precedent, it is impossible for Jackson to prove that he met the requirement of having worked 1,250 hours for a qualified employer—i.e., the firm. He therefore is exempt from coverage under the FMLA and the court must grant defendant’s motion for summary judgment dismissing the complaint in its entirety.

. See Jackson v Abrams, Fensterman, Fensterman, Flowers, Greenberg & Eisman, LLP, 52 Misc 3d 183 (Civ Ct, Kings County 2016) (Jackson II).

. See Jackson v Abrams, Fensterman, Fensterman, Flowers, Greenberg & Eisman, LLP, 42 Misc 3d 1230(A), 2014 NY Slip Op 50285(U) (Civ Ct, Kings County 2014).

. There is no legally cognizable cause of action against Fensterman under the FMLA, since Fensterman, as an individual, did not employ 50 or more workers.

. See also the Department of Labor Regulation’s definition of “companionship services,” as services providing fellowship care and protection of a person who cannot care for his own needs. Such services may include household work related to the care of the aged or infirm person and may also include the performance of general household work: “Provided however, that such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked” (Clopton v TSS, Inc., 2011 WL 346478, *4, 2011 US Dist LEXIS 10196, *12 [additional emphasis added]; 29 CFR 552.6; see Fowler v Incor, 279 Fed Appx 590 at 6 [10th Cir 2008]).